**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

TERESA S. FARRAR,       )
                           )

    Plaintiff,         )
                           )

    v.               )     CIVIL NO. 3:11cv457-JAG
                           )

MICHAEL J. ASTRUE,      )
Commissioner of Social Security,  )
                           )

    Defendant.        )
                           )

## REPORT AND RECOMMENDATION

Teresa S. Farrar has twice applied for disability benefits since she stopped working in December 2006 due to degenerative disc disease. An ALJ rejected her first application on July 17, 2009 and Plaintiff did not appeal that decision. In a subsequent proceeding, a different ALJ also rejected Plaintiff's claim — placing more weight on the previously issued decision than on any other evidence provided him, including four different medical opinions — all of which he rejected.

Plaintiff now challenges the ALJ's decision in this Court, seeking judicial review pursuant to 42 U.S.C. § 405(g), and relying principally on new medical opinions presented to the second ALJ. The parties have submitted cross-motions for summary judgment which are now ripe for review.[1] Having reviewed the parties submissions and the entire record in this case, the

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's Motion for Summary Judgment (ECF No. 6) be GRANTED; that Plaintiff's Motion to Remand (ECF No. 7) be GRANTED; that Defendant's Motion for Summary Judgment (ECF No. 11) be DENIED; and that the final decision of the Commissioner be REMANDED for further consideration of the medical opinions.

## I. BACKGROUND

In this case, Administrative Law Judge Mark A. O'Hara ("ALJ O'Hara") placed great weight on the previous decision of Administrative Law Judge Charles Boyer ("ALJ Boyer"), who denied Plaintiff's prior disability application on July 17, 2009. In doing so, ALJ O'Hara was required to consider potential changes in Plaintiff's condition and the import of additional evidence. *See Albright v. Comm'r Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999) ("[F]inal agency adjudications should carry considerable weight"); *see also* Social Security Acquiescence Ruling (AR) 00-1(4) ("[A]n adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances"). Accordingly, the Court will separately summarize the relevant evidence that existed when ALJ Boyer rendered his decision, additional evidence presented to ALJ O'Hara, and the relevant portions of ALJ Boyer's decision.

## A.   Medical Evidence through July 17, 2009

Beginning in November 2006, Plaintiff started reporting chronic back pain, chest pain and pain in her lower body. (R. at 316.) On November 15, 2006, she sought treatment for this condition at Lakeside Medical Associates, returning again on December 13, 18 and 22 of that year. (R. at 313-16.) An x-ray taken during this period showed "mild changes of disc disease

2

and degenerative change." (R. at 326, 335.) Specifically, the x-ray revealed slight accentuation of lumbar lordosis, spur formation or limbus vertebra at L1-L2, narrowing and sclerosis of the right facet joints (particularly at L5-S1), minimal degenerative change at the lower SI joints and slight narrowing of the L1-L2 disc space. (R. at 326, 335.) The radiologist advised that an MRI might be more helpful for further diagnosis. (R. at 326, 335.)

On January 5, 2007, Plaintiff underwent an MRI of her lumbar spine. (R. at 322, 342.) The radiologist found the results "unremarkable," ruling out disc herniation, compression on the nerve roots or spinal stenosis as the cause of Plaintiff's back pain. (R. at 322, 342.) The radiologist further noted that vertebral body alignment and thecal sac appeared to be within normal limits. (R. at 322, 342.)

Between March and May 2007, Plaintiff visited Katrina Murphy, M.D., Ph.D. ("Dr. Murphy"), a neurosurgeon. (R. at 109-110.) Plaintiff complained that her medications caused lethargy, except for Voltaren, which provided her with no relief. (R. at 109.) Upon examination, Dr. Murphy found that Plaintiff had some weakness that did not conform with any single nerve root, which was diffuse and thus believed to be in part related to the pain. (R. at 109.) Accordingly, Dr. Murphy prescribed anti-inflammatory medication. (R. at 109.) Upon follow-up in April 2007, Dr. Murphy prescribed Ultracet and encouraged Plaintiff to continue with a home exercise program. (R. at 109-110.) The next month, Plaintiff reported no improvement in her symptoms, but Dr. Murphy opined that the pain and weakness resulted from Plaintiff's efforts. (R. at 110.) Dr. Murphy concluded her treatment with Plaintiff by referring her to a pain management clinic. (R. at 110.)

On May 16, 2007, Plaintiff underwent a CT scan. This confirmed the findings of no bulging annulus, no disc herniation and no spinal stenosis. (R. at 354.) It also confirmed the

3

presence of "[m]ild degenerative facet disease." (R. at 354-55.) The findings were otherwise "unremarkable." (R. at 355.)

Beginning on July 5, 2007 and continuing throughout the relevant period, Plaintiff was treated by Earle W. Moore, M.D. ("Dr. Moore") of the Chase City Family Practice. (R. at 366-74.) After reviewing Plaintiff's x-rays, CT scan and MRI, Dr. Moore diagnosed Plaintiff with degenerative changes of the facet joints, slight narrowing of L1-2 disk space with spur formation and a minimal left paracentral bulging annulus at L4-5. (R. at 376.) He noted that Plaintiff had previously been prescribed multiple medications that provided no relief. Thus, Dr. Moore prescribed pain medication (Vicodin) and administered a Kenalog injection, which is an anti-inflammatory corticosteroid. (R. at 376.)

Plaintiff continued to see Dr. Moore, visiting him on September 20, 2007; November 26, 2007; February 21, 2008; September 2, 2008; and March 13, 2009. (R. at 369-74.) She also treated with other physicians in Dr. Moore's office on June 4, 2009 and July 8, 2009. (R. at 367-68.) During this time, Plaintiff reported that epidural injections did not relieve her pain but that the Kenalog injections were effective. (R. at 374.) Thus, Dr. Moore continued to administer Kenalog injections and prescribed a nonsteroidal anti-inflamatory medication (Dicoflenac). (R. at 373.)

## B. Decision of Administrative Law Judge Boyer Issued on July 17, 2009

Based principally on the above medical record, ALJ Boyer denied Plaintiff's application for disability benefits on July 17, 2009. (R. at 105-113.) In reaching this conclusion, ALJ Boyer relied on the opinions of DDS medical consultants who opined that Plaintiff could perform light work with occasional balancing, stooping, kneeling, crouching, crawling, climbing of ramps and stairs but never climbing ladders or ropes. (R. at 111.) These medical consultant opinions are

4

not contained in the record presently before this Court, and there is no indication that those opinions were later presented to ALJ O'Hara.

ALJ Boyer also emphasized a perceived gap in Plaintiff's treatment history. (R. at 111.) According to him, Plaintiff did not see any physician for treatment between July 2007 and March 2009 — a fact which is clearly untrue based upon the medical history recited above. (R. at 111.) The Court surmises from ALJ Boyer's decision that the record presented to him lacked any evidence of Plaintiff's treatments during this supposed gap. (R. at 111.)

## C.   Medical Evidence since July 17, 2009

Plaintiff continued to see Dr. Moore after ALJ Boyer's decision. On August 11, 2009, Dr. Moore examined Plaintiff, noting restricted flexion with pain in her left buttock area. (R. at 366.) However, he also found that a straight leg raise was not positive until the leg reached ninety degrees. (R. at 366.) Dr. Moore increased Plaintiff's pain medication dosage on November 19, 2009 and continued those prescriptions on December 10, 2009. (R. at 401-02.)

On November 18, 2009, DDS referred Plaintiff for a lumbar spine x-ray. (R. at 382.) According to the results, Plaintiff exhibited moderate to severe hyperlordosis in the lumbrosacral spine without malignment; well-preserved disc spaces, but moderate to severe facet osteoarthritis at L5-S1 that was more pronounced on the right; minimal degenerative disc disease and mild facet osteoarthritis at L4-L5 and L3-L4; and mild to moderate multilevel degenerative disc disease in the upper lumbar spine. (R. at 382, 384-85.)

On December 1, 2009, DDS referred Plaintiff to Bollinig Feild, M.D. ("Dr. Feild") for an examining consultation and medical opinion. (R. at 387-400.) Dr. Feild's report references several aspects of Plaintiff's examination which he found perplexing. For example, he noted that Plaintiff stood during the interview and, when asked, she indicated that she did this because she

was "trying to find a position that helps the pain." (R. at 389.) Dr. Feild indicated that "[t]his does not make a lot of sense to [him]." (R. at 389.) Also, after Plaintiff initially indicated that she could not bend forward to touch her toes, she then bent forward thirty degrees. (R. at 390.) In response, Dr. Feild noted that he "assume[d] this is an objective finding. It appears to be." (R. at 390.) Another example involves Plaintiff's inability to raise her arms above shoulder level without added pain, which Dr. Feild found to be a "very unusual complaint associated with back pain." (R. at 390.) Finally, in forming his opinion, Dr. Feild noted that Plaintiff's "pain is way out of proportion to any abnormalities detected on plain x-rays or scans of her lumbar spine." (R. at 391.)

Despite the well-documented anomalies of Plaintiff's condition, Dr. Feild — a state agency retained expert — concluded that "she appears to have a major problem with her back." (R. at 391.) He further concluded that "she has MSS with *extreme* limitations." (R. at 391 (emphasis added).) In drawing these conclusions, Dr. Feild also made a point "to mention that her statements and portrayal of symptoms are consistent with the medical signs and laboratory findings . . . [and] the medical history and treatment." (R. at 391.) Moreover, he indicated that she was "cooperative and seemed to give forth her best effort during examination." (R. at 391.) Based on this examination and his review of the medical records, Dr. Feild opined that Plaintiff could stand and walk for only two hours during an eight-hour workday; could sit less than four hours during an eight-hour workday; could lift 10 pounds occasionally; and, cannot bend, stoop, or crouch. (R. at 391.)

On August 22, 2010, Dr. Moore completed a "Lumbar Spine Impairment Questionnaire" designed to elicit his opinion concerning the impact of Plaintiff's condition on her ability to work. (R. at 414-420.) He noted a diagnosis of "severe osteoarthritis of lumbar spine" with a

"poor" prognosis. (R. at 414.)  He further noted that her pain was constant and could not be completely relieved with treatment without also causing unacceptable side effects. (R. at 416.) Dr. Moore opined that Plaintiff could sit no more than one hour during an eight-hour workday, could stand or walk no more than one hour during an eight-hour workday, and that she would need to get up and move around every five minutes. (R. at 417.)  He further opined that Plaintiff could never carry or lift anything weighing in excess of five pounds. (R. at 417.)  As a result of her condition, Dr. Moore concluded that Plaintiff would miss more than three days of work each month. (R. at 419.)  As for postural and exertional limitations, he opined that Plaintiff could not push, pull, kneel, bend or stoop under any circumstances. (R. at 419.)[2]

On December 8, 2009, David C. Williams, M.D. ("Dr. Williams"), a non-treating consulting physician, offered his opinion regarding Plaintiff's residual functional capacity. (R. at 114-125.) According to Dr. Williams, Plaintiff retains the RFC to perform sedentary work only. (R. at 123.) He also found that she could not lift more than ten pounds; could not stand or walk more than two hours during an eight-hour workday; that she could only occasionally climb ramps, stairs, ladders, ropes or scaffolds; and, that she can only occasionally stoop, kneel, crouch or crawl. (R. at 120-21.) Dr. Williams acknowledged that his opinion deviated from that offered by Dr. Feild, but does not consider the opinion offered by Dr. Moore. (R. at 121-22.) An identical assessment was offered by another non-treating consulting physician, Martin Cader, M.D. ("Dr. Cader"), except that Dr. Cader found that Plaintiff could frequently lift or carry ten pounds. (R. at 126-137.)

---

[2] Plaintiff also offered additional medical evidence concerning a brief depressive episode, but this aspect of her medical condition does not appear to be relevant to the ALJ's error or this appeal. Thus, the Court will not discuss those portions of the medical record.

## III. PROCEDURAL HISTORY

Plaintiff protectively filed her current application for Social Security Disability benefits ("SSD") and Supplemental Security Income benefits ("SSI") on July 31, 2009, alleging disability since December 13, 2006 due to degenerative disc disease. (R. at 227-28.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3] (R. at 144-46, 150-56.) On September 10, 2010, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 63-101.) At the hearing, Plaintiff amended her onset date to July 18, 2009, to correspond with a previous claim that was denied on July 17, 2009. (R. at 312.) On December 22, 2010, the ALJ denied Plaintiff's application, finding that Plaintiff retained the residual functional capacity to perform light work and, therefore, sufficient jobs existed in the economy that she could perform. (R. at 13-28.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-9.)

## III. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*,

---

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).  Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.*; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact — if the findings are supported by substantial evidence — are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*, 667 F.3d at 476 (citation omitted).  If the ALJ's determination is not supported by substantial evidence on the record or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[5] based on an assessment of

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

the claimant's residual functional capacity ("RFC")[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock,* 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Hancock,* 667 F.3d at 472; *Powers v. Apfel,* 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert,* 482 U.S. at 146, n.5 (1987)). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."

---

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

*Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ADMINISTRATIVE FINDINGS

The ALJ found at step one that Plaintiff had not engaged in SGA since December 13, 2006, well before her alleged onset date. (R. at 15.) At steps two and three, he found that Plaintiff had the severe impairment of a back disorder, but that this impairment did not meet or equal any listing in 20 C.F.R. pt. 404, subpt. P, app. 1, as required for the award of benefits at that stage. (R. at 15-17.) The ALJ next determined that Plaintiff had the RFC to perform a range of light work except that she can never climb ladders, ropes or scaffolds and can only perform other postural activities occasionally (climbing stairs or ramps, balancing, stooping, kneeling, crouching and crawling). (R. at 17-18.)

In determining Plaintiff's RFC, the ALJ emphasized several key aspects of the record. First, he placed "considerable weight" on the prior decision issued by ALJ Boyer, "in light of the fact that the evidence of records does not document significant changes in the claimant's medical condition since that decision." (R. at 24); *see Albright v. Comm'r Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999) ("[F]inal agency adjudications should carry considerable weight"). Specifically, the ALJ indicated that "there are less than 10 pages of new treatment records" produced since ALJ Boyer's decision.[7] (R. at 23.) Also, he found that those additional treatment

---

[7] Because ALJ Boyer incorrectly concluded that Plaintiff had a "gap" in her treatment for approximately two years, and because records indicating otherwise are in the record now before the Court, it is clear that more than 10 additional pages of medical records were produced to ALJ O'Hara. Additional evidence necessarily included both the treatment records during the non-existent "gap" identified by ALJ Boyer between August 2007 and March 2009 and the four additional medical opinions formed after ALJ Boyer's July 2009 decision. Thus, the additional records were not as light as ALJ O'Hara appears to have perceived them.

records did "not document significant changes in the claimant's medical condition since that decision." (R. at 24.)

Second, the ALJ rejected all medical opinions in the record, including those of treating physician Dr. Moore, examining consulting physician Dr. Feild, and non-examining state agency consultants Drs. Williams and Cader. (R. at 24-25.) His reasoning for rejecting the opinion of Dr. Moore was that "it [was] not supported by the longitudinal record with its minimal physical findings and generally routine and conservative treatment." (R. at 24.) The ALJ rejected the consultative opinions for similar reasons, specifically noting that each failed to "address[] how the claimant's physical condition had changed since ALJ Boyer's July 2009 decision and the prior DDS physicians' assessments based on the whole longitudinal record at that time." (R. at 25.) Also, with respect to Dr. Feild's opinion, the ALJ found that it "was based exclusively on the claimant's subjective symptoms and limitations, rather than on objective findings and diagnostic test results." (R. at 26.)

Having rejected each medical opinion presented to him, the ALJ then proceeded to posit an RFC based upon his own review of the medical record and the prior decision of ALJ Boyer. (R. at 24-25.) He therefore adopted ALJ Boyer's determination that Plaintiff "could do light work . . . that did not involve climbing ladders, ropes or scaffolds and other postural activities only occasionally." (R. at 24.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a bread maker, assistant produce manager, dryer operator, assistant meat manager or farm worker, because of the levels of exertion required in each position. (R. at 26.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ found that there are other occupations which exist in significant

13

numbers in the national economy that Plaintiff could perform.  (R. at 26-27.)  Specifically, the

ALJ found that, regardless of her limitations, Plaintiff could work as a cashier, fast food worker

or food preparation worker.  (R. at 27.)  Accordingly, the ALJ concluded that Plaintiff was not

disabled and was employable such that she was not entitled to benefits.  (R. at 27.)

## VI. ANALYSIS

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the

alternative, she seeks reversal and remand for additional administrative proceedings.  (Pl.'s

Mem. Sup. Mot. Sum. J. ("Pl.'s Mem.") at 16-17.)  In support of her position, Plaintiff argues

that: (1) the ALJ failed to properly weigh a previous disability decision issued by another ALJ;

(2) the ALJ failed to apply the "treating physician rule"; (3) the ALJ failed to properly evaluate

Plaintiff's credibility; and, (4) the ALJ relied on flawed vocational expert ("VE") testimony.

(Pl.'s Mot. at 7-16.)  Defendant argues in opposition that the Commissioner's final decision is

supported by substantial evidence and application of the correct legal standard such that it should

be affirmed.  (Def.'s Mem. at 11-27.)  Specifically, Defendant argues that the ALJ applied the

correct rules for weighing previous ALJ decisions, weighing treating physician opinions, making

credibility determinations and eliciting vocational expert testimony.  (*Id.*)

## A.    Consideration of ALJ Boyer's July 2009 Decision Denying Benefits

As a general rule, it was proper for ALJ O'Hara to consider the previous, final decision

issued by ALJ Boyer as evidence and weigh it accordingly.  In *Lively v. Sec. Health & Human

Servs.*, 820 F.2d 1391 (4th Cir. 1987), the Fourth Circuit noted that "[i]t is by now well-

established that fundamental and familiar principles of *res judicata* apply in Social Security

disability cases."  *Id.* at 1392 (citation omitted).  Applying those principles, the Court held that

*res judicata* "prevent[s] the Secretary from reaching an inconsistent result in a second

proceeding based on evidence that has already been weighed in a claimant's favor in an earlier proceeding." *Id.* (citing *Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir. 1987)). The Court further explained that "the Secretary must shoulder the burden of demonstrating that" a claimant's condition changes sufficiently to reject a prior finding. *Id.*

In *Albright*, the Fourth Circuit explained that the *Lively* decision "is [] best understood as a practical illustration of the substantial evidence rule." 174 F.3d at 477. The Court further explained as follows:

> At its essence, *Lively* really has very little to do with preclusion. Although we discussed the doctrine of *res judicata* generally, and more particularly its incorporation into the Social Security Act through 42 U.S.C. § 405(h), *Lively* is not directly predicated on the statute, but on "*[p]rinciples* of finality and fundamental fairness *drawn* from § 405(h)." *Id.* (emphases added). The distinction is subtle, but important.

*Albright*, 174 F.3d at 477. Based on this explanation, it cannot be said that a previous decision has preclusive effect. Indeed, "'*[r]es judicata* bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.'" *Id.* at 476 (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998) (Posner, J.)).

Distilling the Fourth Circuit's holdings in *Lively* and *Albright* to a practical and readily applicable standard, the Commissioner has issued AR 00-1(4), which requires the ALJ to consider three criteria when determining what weight to apply to a previously issued decision: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period under consideration in the subsequent claim; and, (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

15

Although ALJ O'Hara cited AR 00-1(4), he failed to properly apply it. Instead, he relied solely on a perceived paucity of evidence showing a change in Plaintiff's condition, incorrectly noting that "there are less than 10 pages of new treatment records." (R. at 23.) This statement ignores the appearance of additional treatment records for the period between August 2007 and March 2009 that were either overlooked by ALJ Boyer or, more likely, were not in the record presented to him. (*Compare* R. at 111 *with* R. at 367-74.) Thus, the perceived "gap" of treatment on which ALJ Boyer apparently relied was simply untrue. Regardless of whether ALJ Boyer overlooked the records or whether Plaintiff failed to ensure their addition to the record before him, ALJ O'Hara certainly had those records but did not consider their impact on the weight to be afforded ALJ Boyer's decision.

Moreover, there were four separate medical opinions presented to ALJ O'Hara which were not presented to ALJ Boyer — and ALJ O'Hara rejected all four of them. The opinions given to ALJ Boyer unanimously concluded that Plaintiff was able to perform light work. (R. at 111.) However, the opinions presented after ALJ Boyer's decision concluded either that Plaintiff possessed no RFC or was able to perform sedentary work with additional limitations. (R. at 24-25.) Such opinions constituted additional medical evidence that ALJ O'Hara was required to consider when determining the weight that he ought to assign ALJ Boyer's decision. *See* AR 00-1(4) (directing ALJ's to consider "the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim").

Finally, any arguments to the contrary asserting that the objective medical evidence remained the same since ALJ Boyer's decision is also unavailing. Before July 17, 2009, the date on which ALJ Boyer's decision was issued, x-rays showed only "mild changes of disc disease

16

and degenerative change." (R. at 354.) In contrast, the x-ray taken on November 18, 2009 downgraded Plaintiff's condition from "minimal degenerative change," (R. at 326, 335,) to "mild to *moderate* multilevel degenerative disc disease." (R. at 382, 384-85 (emphasis added).) Although a subtle difference, it is nonetheless a new objective finding and it is particularly poignant given the degenerative nature of Plaintiff's condition. Moreover, the x-ray taken in November 2009 revealed mild facet osteoarthritis at L4-L5 and L3-L4 — a finding not contained in the x-ray taken before ALJ Boyer's decision. (*Compare* R. at 326, 335 *with* R. at 382, 384-85.) "The deference accorded an ALJ's findings of fact does not mean that [a court] credit[s] even those findings contradicted by undisputed evidence." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006).

Because ALJ O'Hara's characterization of the medical record generated after ALJ Boyer's decision ignores several pieces of additional, material evidence, his decision to give ALJ Boyer's decision considerable weight was in error. For this reason, the Court recommends that the ALJ's decision be remanded for further consideration of the medical record.

**B.   Consideration of Medical Opinion Evidence**

Plaintiff also challenges the ALJ's decision to afford Dr. Moore's opinion "no significant weight," arguing that it violates the treating physician rule. (Pl.'s Mem. at 9-11.) Likewise, she challenges the ALJ's decision to afford no significant weight to Dr. Feild's opinion. (*Id.* at 12.) On both counts, Defendant argues that the ALJ correctly rejected both opinions, given certain contradictory evidence in the medical record. (Def.'s Mem. at 11-15.) Most notably, Defendant relies on certain aspects of Dr. Feild's report that admit to perplexing aspects of Plaintiff's examination. (*Id.* at 13-14.)

17

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. 20 C.F.R. § 404.1527(d)(3)-(4), (e); *Jarrells v. Barnhart*, No. 7:04cv411, 2005 U.S. Dist. LEXIS 7459, at *9-10 (W.D. Va. Apr. 26, 2005).

Here, the ALJ O'Hara was presented with four different opinions positing three different RFCs. Given the conflicting medical evidence, ALJ O'Hara was certainly permitted to assign

different levels of weight to each of the opinions. However, "[a]bsent contrary medical evidence, the [ALJ] lack[s] any basis to reject the competent judgment of a concededly reliable expert." *Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988). Moreover, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). Where "no medical opinion" supports the ALJ's RFC determination, as a "lay person" he is "simply not qualified to interpret raw medical data in functional terms." *Id.*[8]

Here, the ALJ concluded Plaintiff retained an RFC to perform light work despite the insistence of four different medical experts that she could perform either no work or, at most, sedentary work. Although the medical record might support a decision to give greater weight to some of these opinions over others, the ALJ utterly failed to give any weight to any of those opinions. Essentially, the ALJ rejected no fewer than four medical opinions and, instead, formed his own RFC based on the raw medical data. This he was forbidden to do. *Nguyen*, 172 F.3d at 35.

This error was particularly pronounced with regard to the opinions of Drs. Williams and Cader, which the ALJ rejected solely because both failed to address "how the claimant's physical condition had changed since ALJ Boyer's July 2009 decision and the prior DDS physicians' assessments based on the longitudinal record at that time." (R. at 25.) Of course, as the Court has already explained, ALJ O'Hara failed to recognize several differences between the record presented to him and that before ALJ Boyer. *Supra* at Section VI(A). Without more explanation

---

[8] Rather than reject all four medical opinions in favor of his own opinion, the ALJ could have ordered the testimony of another medical expert to be presented at the hearing. This would have allowed the ALJ to further examine the reason for the apparent disparity among the opinions in the record.

from the ALJ, it is unclear whether he could properly refuse to afford any significant weight to the opinions of Drs. Williams and Cader.

Because the ALJ was not permitted to render a medical opinion based on his own interpretation of the raw medical data — particularly one that contradicts four medical opinions in the record before him — the Court recommends that the case be remanded for further consideration.

## C.   Credibility Analysis and Vocational Expert Testimony

Plaintiff also challenges the ALJ's credibility determination and the impact of a flawed RFC analysis on the VE testimony. Since both of these arguments necessarily rely on Plaintiff's RFC, and since the Court has concluded that the ALJ's RFC analysis was flawed, the Court recommends that the ALJ reconsider his credibility analysis and the VE testimony at Step Five upon rendering a RFC consistent with this decision.

## VII. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's Motion for Summary Judgment (ECF No. 6) be GRANTED; that Plaintiff's Motion to Remand (ECF No. 7) be GRANTED; that Defendant's Motion for Summary Judgment (ECF No. 11) be DENIED; and, that the final decision of the Commissioner be REMANDED for further consideration of the medical evidence.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable John A. Gibney and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within**

fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: July 13, 2012